**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sharon Bencic, | No. CV-12-00627-PHX-NVW |
| Plaintiff, | **ORDER** |
| vs. | |
| Michael J. Astrue, Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Sharon Bencic seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.    BACKGROUND**

**A.    Factual Background**

Bencic was born on February 2, 1958, and reached the age of 50 years old slightly more than three months after October 27, 2007, the date of alleged onset of disability. After injuring her lumbar spine at work, she had an x-ray taken that revealed degenerative disc disease. She has an eighth grade education and worked as a waitress and a cook, but has not worked since October 27, 2007.

In September 2008, Bencic reported that she is able to perform personal care, such as dressing and bathing, prepare meals, and do some housework and laundry. She goes out every day and can walk, drive, and ride in a car. She can go out alone. She shops weekly for food and household items. She can swim two or three times a week.

In April 2010, Bencic testified that she is able to drive and drove 45 minutes without stopping to the administrative hearing, but when she goes to Phoenix, her daughter drives and they take a break during the two-hour trip. She also testified that she can stand or sit only 15 minutes before taking a break and lying down. She testified that she does her laundry, watches television, and goes to church.

**B.     Procedural History**

On July 23, 2008, Bencic applied for disability insurance benefits and supplemental security income, alleging disability beginning October 26, 2007. On April 12, 2010, she appeared with her attorney and testified at a hearing before the ALJ. On July 20, 2010, the ALJ issued a decision that Bencic was not disabled within the meaning of the Social Security Act. The Appeals Council denied Bencic's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. On March 23, 2012, Bencic sought review by this Court.

**II.     STANDARD OF REVIEW**

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole

and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

## III.   FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At the step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

IV.   **ANALYSIS**

The ALJ found that Bencic meets the insured status requirements of the Social Security Act through September 30, 2010, and that she has not engaged in substantial gainful activity since October 27, 2007.  At step two, the ALJ found that Bencic has the following severe impairments:  degenerative disc disease of the lumbar spine and obesity. At step three, the ALJ found that Bencic does not have an impairment or combination of impairments that meets or medically equals on one of the listed impairments in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404.

At step four, the ALJ found that Bencic "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb ladders, ropes and scaffolds, stoop, kneel, crouch, and crawl."  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).  "Light work" may require "a good deal of walking or standing."  *Id.*  The ALJ further found that Bencic is capable of performing her past relevant work as a waitress as actually and generally performed.

**A.**     **The ALJ Did Not Err in Weighing Medical Source Evidence.**

**1.**     **Legal Standard**

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians:  (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians.  *Id.*  A treating physician's opinion is afforded great weight because such physicians are "employed to cure and [have] a greater opportunity to observe and know the patient as an

individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. Moreover, the Commissioner must give weight to the treating physician's subjective judgments in addition to his clinical findings and interpretation of test results. *Id.* at 832-33.

Further, an examining physician's opinion generally must be given greater weight than that of a non-examining physician. *Id.* at 830. As with a treating physician, there must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at 830-31.

The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating physician or an examining physician. *Id.* at 831. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn*, 495 F.3d at 631.

Moreover, Social Security Rules expressly require a treating source's opinion on an issue of a claimant's impairment be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). If a

1

2   treating source's opinion is not given controlling weight, the weight that it will be given

3   is determined by length of the treatment relationship, frequency of examination, nature

4   and extent of the treatment relationship, relevant evidence supporting the opinion,

5   consistency with the record as a whole, the source's specialization, and other factors.  *Id.*

6   Where there is a conflict between the opinion of a treating physician and an examining

7   physician, the ALJ may not reject the opinion of the treating physician without setting

8   forth specific, legitimate reasons supported by substantial evidence in the record.  *Orn*,

9   495 F.3d at 632.

10              **2.      Dr. James Hurley**

11       Dr. Hurley is Bencic's primary care physician.  On February 27, 2009, Dr. Hurley

12   opined that Bencic could sit for 45 minutes at one time, stand for 15 minutes at one time,

13   sit for a total of 4 hours in an 8-hour work day, and stand/walk for a total of 2 hours in an

14   8-hour work day.  He opined that she could lift/carry up to 5 pounds frequently, 6-10

15   pounds occasionally, and never more than 10 pounds.  He further stated that she could

16   occasionally bend and reach but she was not able at all to squat, crawl, or climb.  He

17   recommended moderate restriction of activities involving unprotected heights, being

18   around moving machinery, and exposure to marked changes in temperature or humidity;

19   mild restriction of driving automobile equipment; and no restriction of exposure to dust,

20   fumes, and gases.  Dr. Hurley opined that pain severely affected Bencic's ability to

21   function.  Dr. Hurley noted that Bencic "inadvertently filled out the form which was

22   accurate to a point – corrections have been made."

23       On March 17, 2010, Dr. Hurley opined that Bencic could continuously sit for 30

24   minutes at a time, sit for a total of 2 hours in an 8-hour work day, and stand/walk for a

25   total of one hour in an 8-hour work day.  He said she could lift/carry up to 10 pounds

26   occasionally and never more than 10 pounds.  He further opined that pain and fatigue had

27   a moderately severe effect on Bencic's ability to function.

28

Bencic contends that the ALJ erred by giving "little weight" to Dr. Hurley's opinions. She contends that his opinions are well supported by his medical records, but identifies records that only corroborate the diagnosis of degenerative disc disease, not the severity of impairment.

### 3.    Dr. Michael Trainor

Dr. Trainor is a spinal surgeon who examined Bencic on May 8, 2008. He noted that she described her pain as "sharp, stabbing, pulling, tearing, shooting and throbbing," "present all day long," and "usually worse with virtually all activities from walking to sitting, standing, climbing stairs, bending, driving and even lying in bed." She described the pain as "unbearable."

Dr. Trainor observed that Bencic appeared to be "in no acute distress." She needed no assistance getting onto the examination table, showed no abnormalities with balance or coordination, and walked without a limp. Based on review of her radiological studies and the physical examination, Dr. Trainor concluded that Bencic had sustained a disc herniation at the L5-S1 following her lifting injury at work, which aggravated her degenerative disc disease, and that most of her back pain emanated from aggravated degenerative disc disease. He did not recommend surgical intervention because she was "a two-pack per day smoker" and because performing a fusion at the L5-S1 level would create significant risk of developing spondylosis above the fusion. Dr. Trainor recommended that Bencic return to Dr. Hurley for nonoperative management of her pain.

Dr. Trainor gave Bencic a prescription for Percocet with no refills and said he would not resume her care. He also reported:

> I do not believe that she will tolerate returning to work due to the complaints and severity of her back pain. I do not have a specific anatomic reason to discontinue work, as she does have an overall normal neurological exam.

- 7 -

### 4. Dr. James Maxwell

Dr. Maxwell is a spine specialist who provided an independent medical examination of Bencic on June 13, 2008.   Upon physical examination and review of medical records, Dr. Maxwell opined that Bencic reported discogenic lumbar pain and he found no evidence of lumbar radiculopathy.  He also did not recommend surgery.

### 5. Dr. Michael Winer

Dr. Winer is another spine specialist, and he examined Bencic on October 16, 2008.  Among other things, he noted that she exhibited "some pain behavior with change of position and movement" and had "limited mobility secondary to apparent pain with flexion to 40 degrees, extension 10 degrees with increased pain in both directions."  In his review of Bencic's medical records, Dr. Winer noted that Dr. Maxwell's "preliminary report indicates work status as no work and he indicates her condition is not stationary; however, he indicates no impairment and no supportive care."

Dr. Winer also observed that Bencic was receiving pain management with methadone and Soma from Dr. Hurley.  He further reported:  "I would recommend that she continue to see him for this pain management.  I would not accept responsibility of pain management with a patient on methadone.  At some point, I would encourage her to wean off this medication, hopefully after some improvement by conservative means, as described above."

Dr. Winer agreed with the other physicians that Bencic was not a good candidate for surgery at that time.  He also opined that she could not return to work without restrictions as a cook.  He said that she is not able to lift more than 10-15 pounds on an occasional basis, needs to change position frequently, and needs to avoid repetitive bending, lifting, and stooping.  Dr. Winer reported that he discussed this with Bencic and "encouraged her to try to modify her lifestyle and work to light tasks rather than looking for surgical intervention to attempt to improve her functional level."

1

2        **6.      The ALJ's Weighing of Medical Source Evidence**

3           The ALJ's hearing decision described in detail Bencic's medical records,

4    including that she reported experiencing back pain while working as a cook and lifting a

5    5-gallon bucket of water and French fries and she denied having any history of significant

6    back injury or problem prior to that date.   However, lumbar spine x-rays taken on

7    October 26, 2007, showed degenerative disc disease and atherosclerotic vascular disease.

8    The ALJ described details of an MRI and additional lumbar spine x-rays that showed

9    mild disc degeneration, but not a condition that would cause the level of functional

10   limitation that Bencic alleged.   The hearing decision further detailed the results of the

11   February 26, 2008 examination by pain management physician Dr. Harald Gutgsell, the

12   May 8, 2008 examination by Dr. Trainor, the June 13, 2008 physical examination by Dr.

13   Maxwell, and the October 16, 2008 examination by Dr. Winer.

14          The ALJ's hearing decision provided specific, legitimate reasons supported by

15   substantial evidence in the record for assigning little weight to Dr. Hurley's two residual

16   functional capacity assessments:

17              The claimant has had conventional treatment for back pain,
                with medication, epidural injections and physical therapy
18              (Exhibits 1F/2, 3F/5, 3, 6F, 7F) and as discussed above, the
                claimant has been evaluated by 3 spine specialists who have
19              all recommended that she pursue conventional treatment
                methods instead of surgery (Exhibit 1F/2, 4F/6, 6F/6).  Dr.
20              Hurley's treatment records show that [] the claimant
                continued to report experiencing back pain, and began
21              reporting left leg edema and hip pain on July 1, 2009 (Exhibit
                18F/13, 17).  However, her back and leg pain were noted as
22              being unchanged through April 14, 2010 and the claimant
                was not referred for further evaluation by a specialist (Exhibit
23              18F/1-19).  In addition, Dr. Hurley has not ordered further x-
                ray or MRI reports.  Moreover, Dr. Hurley's April 21, 2009
24              treatment notes even show that he explained to the claimant

25

26

27

28                                              - 9 -

1

2          that she has been addicted to pain medication for some time
           (Exhibit 18F/21). . . .
3

4          Little weight is given to the opinions of the claimant's
           primary care physician, Dr. James Hurley, because it is
5          inconsistent with the record as a whole (Exhibit 17F).  In his
           February 17, 2009 opinion, Dr. Hurley opined that . . . .  In
6          his March 17, 2010 opinion, Dr. Hurley opined that . . . .
           However, the objective medical evidence, as discussed above,
7          including the opinions by some spine specialists, do not
           support the limitations described in Dr. Hurley's opinions.
8

9      Bencic also contends that the ALJ erred by giving weight to only a portion of Dr.

10   Trainor's opinion.  The ALJ stated:

11
           Substantial weight is given to [the] May 8, 2008 [] opinion of
12         spinal surgeon Dr. Michael Trainor to the extent that it is
           consistent with the record as a whole (Exhibit 4F/7).  Upon
13         examining the claimant, Dr. Trainor opined that while the
           claimant will not tolerate returning to work due to complaints
14         and severity of her back pain, he did not have "a specific
           anatomic reason to discontinue work as she does have an[]
15         overall normal neurological exam" (Id.).
16

17   Although Dr. Trainor reported Bencic's complaints of severe pain and opined that she

18   would "not tolerate returning to work," it was the ALJ's responsibility to determine the

19   credibility of Bencic's complaints.  *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.

20   1995) (the ALJ is responsible for resolving conflicts in medical testimony, determining

21   credibility, and resolving ambiguities).  The ALJ did not err by giving substantial weight

22   to Dr. Trainor's medical opinion that Bencic had an overall normal neurological exam

23   and did not have a specific anatomic irregularity severe enough to discontinue work.

24        Thus, the ALJ set forth specific, legitimate reasons supported by substantial

25   evidence in the record for assigning little weight to Dr. Hurley's opinions and substantial

26   weight to some of Dr. Trainor's opinions.

27

28
                                       - 10 -

**B.      The ALJ Did Not Err by Not Finding Bencic Disabled Under Medical Vocational Rule 20 C.F.R. Part 404, Subpart P, App. 2 § 201.10.**

Bencic contends that at step four the ALJ should have found that she is unable to return to her past relevant work and then should have gone on to step five and found that she lacked skills transferable to sedentary work and is deemed disabled because of her age.  As found above, the ALJ did not err in finding Bencic is able to perform her past relevant work as a waitress and therefore was not required to make any step five findings.  However, even if he had done so, the Medical Vocational Rule 20 C.F.R. Part 404, Subpart P, App. 2 § 201.10 states that a finding of "disabled" for an individual of age 45-49 is warranted if she is restricted to sedentary work, unskilled or has no transferable skills, can no longer perform past relevant work, and is unable to communicate in English or able to speak and understand English, but unable to read or write in English.  Bencic is able to communicate in English and can read and write in English.  The ALJ would not have been required to consider her as an individual approaching advanced age (age 50-54), but only to consider whether to do so because she was within "a few months" of reaching an older age category.  *See* 20 C.F.R. § 404.1563(b).

IT IS THEREFORE ORDERED that the final decision of the Commissioner of Social Security is affirmed.  The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 19th day of December, 2012.

Neil V. Wake
United States District Judge

- 11 -